IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMES E. ROSE, JR.,            :
            Plaintiff,         :    CIVIL ACTION
                               :
        v.                     :
                               :
COUNTY OF YORK, et al.,        :
            Defendants         :    NO. 05-5820

MEMORANDUM AND ORDER

McLaughlin, J.                              January 12, 2007

        The plaintiff has sued Lehigh County, York County, the
City of York, and Scott Rohrbaugh, who according to the complaint
is a York County detective, alleging that his civil rights were
violated by the actions of various city and county officials that
resulted in the termination of his custodial rights over his
daughter.  Scott Rohrbaugh has not been served.  The other
defendants have each moved to dismiss.  The Court will grant the
motions.


I.  Factual Background

        The plaintiff's complaint is often difficult to
understand, but the Court discerns the following factual
allegations, which it assumes are true for the purposes of these
motions:

        In the summer of 2000, Jessica Lowrey ("Lowrey"), the
mother of the plaintiff's daughter, called the Salisbury Township

police and claimed that both she and the child were imprisoned in Rose's home.  After the incident, Lowrey instituted a Protection from Abuse ("PFA") proceeding in the Lehigh County Court of Common Pleas, where the presiding judge entered a temporary order giving custody to Lowrey.  A final PFA order, which affirmed the grant of custody to Lowrey, was entered on July 25, 2000.  As part of the PFA order, Rose was enjoined from threatening Lowrey.

In between the entry of the initial and the final PFA orders, Rose filed his own suit in the Lehigh County Court of Common Pleas seeking custody, which was assigned to the Honorable William E. Ford.  After Rose sent Judge Ford a letter relinquishing his custody claims in July of 2001, the court entered an order granting custody to Lowrey.

On October 23, 2001, Judge Ford granted Rose's motion for a change in venue for the remaining custody proceedings (relating to the enforcement of custodial orders or the determination of visitation rights) from Lehigh County to York County, where Lowrey and the child resided.  On January 22, 2002, the Honorable Richard K. Renn of the York County Court of Common Pleas granted sole custody to Lowrey.

Around the time of the transfer of the custody case to York County, Lowrey convinced police from the City of York and York County to assist her in filing a false police report claiming that Rose had sent Lowrey threatening letters in

-2-

violation of the final PFA order.  The City of York, knowing the allegation was false, nonetheless reported it to York County.

Rose was charged with criminal contempt for sending the letters.  Rose plead guilty after he was threatened by the York County District Attorney with additional charges of criminal contempt if he did not do so.

Shortly thereafter, in November of 2001, when Rose arrived at the York County courthouse for a custody hearing, he was detained by Scott Rohrbaugh, a York County detective, who falsely accused him of carrying weapons in his trunk.

On January 25, 2002, Rose filed a "Renewed Complaint for Full Child Custody" in Lehigh County Family Court.  From February 2002 until at least April of 2006, the plaintiff and Lowrey have entered into various visitation agreements concerning the child.

II.  Procedural History

On November 4th, 2005, the plaintiff initiated this lawsuit, alleging a widespread conspiracy among the four defendants, Lowrey, her mother, and various local officials to deprive him of his civil rights.  On June 7, 2006 he filed a motion for a temporary injunction, asking the court to enjoin the defendants from taking any action regarding the custody of his daughter.

-3-

The plaintiff makes the following claims, asserted against each defendant, in his amended complaint: (1) that Judge Renn's custody order denied Rose his substantive due process right to raise his child and was entered without affording Rose procedural due process; (2) that Judge Renn's order removing the child from the plaintiff's custody was a seizure in violation of the Fourth Amendment; (3) that Rose's indictment for contempt violated his First Amendment right to freedom of speech, as it was motivated by a desire to punish Rose for writing letters to Lowrey, "a white woman" (the plaintiff is African-American); and (4) that the following actions were motivated by racism in violation of the Equal Protection clause: a) the orders and opinions of various Lehigh County and York County judges; and b) the campaign of harassment that culminated in the plaintiff's courthouse detention and guilty plea to the contempt charge. Additionally, the plaintiff alleges that the defendants conspired to deny him his civil rights in violation of 42 U.S.C. §§ 1983 and 1985.

The plaintiff also alleges that the Salisbury Township Police's removal of the child from his home following Lowrey's "false imprisonment" allegation constituted a kidnapping in violation of 18 U.S.C. § 1201, a criminal statute, an allegation the Court will treat as a section 1983 claim.

Finally, the plaintiff alleges a violation of 42 U.S.C.

-4-

§ 1981, but the grounds for the claim are unclear.  He cites section 1981 as supporting federal jurisdiction but never refers to the statute in connection with any factual allegation.  He has therefore failed to state a claim under section 1981, and the claim will be dismissed.

III.  Analysis

          Each of the municipal defendants argues that Rose's claims are barred by the Rooker-Feldman doctrine and that Rose has failed to allege facts that would support municipal liability.  The defendants offer several other bars to Rose's suit: judicial immunity (York County), the fact that Court of Common Pleas judges are state, not county officials (both counties), the Pennsylvania Subdivision Tort Claims Act (the City of York), the statute of limitations (both York defendants), and Younger abstention and res judicata (Lehigh County).

          A.  Rooker-Feldman
                1.  Section 1983 Claims

          The Rooker-Feldman doctrine bars a party who loses in state court from airing in federal court a claim that the state court judgment itself violates the loser's constitutional rights. Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 284, 287 (2005).  A state court loser can not file a de facto

appeal in federal court.  Lance v. Dennis, 126 S.Ct. 1198, 1201 (2006).  A case is a functional equivalent of an appeal if the federal claim was "actually litigated" before the state court, or if the federal claim is "inextricably intertwined" with the state court adjudication.  Marran v. Marran, 376 F.3d 143, 149 (3d Cir. 2004).

Rooker-Feldman divests a federal court of jurisdiction where it is asked to redress injuries caused by an unfavorable state court judgment.  Taliaferro v. Darby Township Zoning Board, 458 F.3d 181 (3d Cir. 2006).  Where the plaintiff's injuries were not caused by the state court judgment but were merely unredressed by it, Rooker-Feldman is inapplicable.  Turner v. Crawford Square Apartments III, L.P., 449 F.3d 542, 547 (3d Cir. 2006).

According to Rose, Judge Renn's order deprived him of his substantive due process right to raise his child, was entered without procedural due process, and effectuated a seizure of his daughter that violated his Fourth Amendment rights.  These claims challenge the propriety of Judge Renn's order itself and therefore are barred by Rooker-Feldman.  Rose explicitly acknowledges that he seeks redress for damages caused by Judge Renn's order.  Am Compl. ¶ 57 ("The damage caused by Judge Renn's order continues to the present day.").  Absent the order, Rose would not have the injuries he now seeks to redress, and

-6-

therefore the claims are barred.  See Turner, 449 F.3d at 547.

Rose's First Amendment claim, which alleges that his indictment for criminal contempt was motivated by a desire to punish him for writing letters to a white woman, is also barred by Rooker-Feldman.

A claim of selective enforcement, when successfully brought on appeal, nullifies the state-court conviction.  See, e.g., U.S. v. Schoolcraft, 879 F.2d 64, 68 (3d Cir. 1989); Gibson v. Superintendent of Law and Pub. Safety, 411 F.3d 427, 441 (3d Cir. 2005).  Rose's First Amendment claim can only succeed, therefore, if the Court finds that his plea was "erroneously entered," a conclusion forbidden by Rooker-Feldman.  See Walker, 385 F.3d at 330.[1]

Rose could have raised his claim in state trial court and on appeal.  See. e.g., Schoolcraft 879 F.2d at 68; Gibson, 411 F.3d at 441.  His raising of the claim before this Court is an end-run around the state court appeals process, an

---

[1]    Additionally, the plaintiff has not stated a valid section 1983 claim, regardless of Rooker-Feldman, because there is no allegation that his state-court plea has been invalidated. See Heck v. Humphrey, 512 U.S. 477, 486-87 & n.10 (1994)("[I]n order to recover damages for allegedly unconstitutional conviction, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal...or called into question by a federal court's issuance of a writ of habeas corpus"); Gilles v. Davis, 427 F.3d 197 (3d Cir. 2006); Williams v. Consovoy, 453 F.3d 173 (3d Cir. 2006).

impermissible collateral attack on the contempt charge.[2]

Turning to Rose's equal protection claims, the Court finds that the plaintiff's claim that the orders of various Lehigh and York County judges were motivated by racism is barred because the injuries are the racially-motivated decisions, the state court judgments themselves.

Rose's remaining equal protection claim is based on the alleged harassment he suffered at the hands of various local officials.  The harassment includes the City of York's conspiring with Lowrey to file a false report of a PFA violation, City of York officials' passing on information about Rose to York County, the York County District Attorney's bullying Rose into pleading guilty and failing to give Rose a copy of the charges against him, and Rohrbaugh's detention of Rose at the courthouse.

This claim is not barred by Rooker-Feldman. Rose's injury does not stem from any state court judgment, but rather a series of actions by local officials who were allegedly motivated by racism to intimidate Rose and interfere with his efforts to regain custody of his daughter.

---

[2]     Rose does not argue that Rooker-Feldman is inapplicable to his First Amendment claim because the contempt proceeding was criminal.  The United States Supreme Court has not suggested that the nature of the proceeding alters the rule that a federal court is not permitted to entertain state-court appeals.  See Exxon Mobil, 544 U.S. at 292 n.8 (citing 28 U.S.C. § 2254, relating to habeas corpus, as an example of specific Congressional authorization to hear state-court appeals).

In <u>Desi's Pizza</u>, 321 F.3d 411 (3rd Cir. 2003), the plaintiffs alleged that various local officials waged a similar campaign of discrimination, which led to the closing of the plaintiffs' store by a state court.  The campaign included filing a petition with the Liquor Control Board, asking the Board to decline the renewal of plaintiffs' liquor license, instructing local police officers to park outside the plaintiffs' store, harassing employees and customers of another store owned by the plaintiffs, and seeking an order closing down the plaintiffs' store as a nuisance.  <u>Id.</u> at 415-16.

The United States Court of Appeals for the Third Circuit held that the plaintiffs' equal protection claim against the town's mayor, the police chief, and the county's district attorney, who together allegedly orchestrated and implemented the harassment, was not barred by <u>Rooker-Feldman</u>.  <u>Id.</u>

Although Rose's claims of conspiracy are not so detailed, they do allege a constitutional violation that is distinct from any injury stemming from the contempt charge itself.  The allegedly unconstitutional actions took place both before the contempt plea (the City of York's alleged solicitation of a false police report) and after (the alleged detention at the York County courthouse) and thus any claim premised on these events cannot be framed as a challenge to a state court judgment itself.  Consequently, any claim springing from these incidents

is not barred by Rooker-Feldman.

Rose's final claim alleges a violation of 18 U.S.C. §
1201, a criminal statute.  Interpreting his complaint with the
latitude afforded pro se litigants, the Court will treat the
claim as arising under section 1983.  Because this claim is
unconnected with any state court judgment, it is not barred by
Rooker-Feldman.


2.  Conspiracy Claims

Rooker-Feldman bars the plaintiff's conspiracy claims
(under section 1983 or section 1985) that are rooted in any
section 1983 claim that is itself barred by Rooker-Feldman.  In a
conspiracy, the injury is the underlying tort. In re Orthopedic
Bone Screw Product Liability Litigation, 193 F.3d 781, 789-90 &
n.7 (3d Cir. 1999); Kost v. Kozakiewicz, 1 F.3d 176, 191 (3d Cir.
1993).  If the underlying section 1983 is not actionable under
Rooker-Feldman, the corresponding conspiracy claim will likewise
be barred since both allege injuries from state court judgments
themselves.  Thus, the only conspiracy claims that survive
Rooker-Feldman are the ones corresponding to the surviving equal
protection claim and the "kidnapping" claim.


3.  Arguments that Rooker-Feldman is Inapplicable

Rose argues that Rooker-Feldman is inapplicable because

-10-

(1) the state court hearings were administrative; (2) he seeks only prospective relief; (3) <u>Rooker-Feldman</u> does not apply to damage claims; and (4) he expressly declined to litigate his constitutional claims in state court.  The Court finds these arguments unpersuasive.

First, the state court hearings were not administrative.  Rose argues, essentially, that the state court proceedings were de facto administrative because the courts failed to consider evidence or entertain legal argument.  Thus, Rose's claim is that state court deviations from established procedure violated his due process rights, and those claims are barred by <u>Rooker-Feldman</u>.  <u>See</u> <u>supra</u> Part III.A.1.

Second, the rule that <u>Rooker-Feldman</u> does not bar prospective relief does not help Rose because he does not seek prospective relief.   Rose seeks only backward-looking relief in the form of compensatory damages.  Compl. ¶ 87; Br. in Opp. (Lehigh County) at 11; <u>See, e.g.,</u> <u>Hook v. Ernst & Young</u>, 28 F.3d 366, 372 (3d Cir. 1994).

Third, <u>Rooker-Feldman</u> applies to damage claims.  <u>See, e.g.,</u> <u>Marran</u>, 376 F.3d at 151.  Cases that allow damage claims do so not because the claim is for damages but because <u>Rooker-Feldman</u> does not apply.  <u>See, e.g.,</u> <u>Ernst v. Child and Youth Services of Chester County</u>, 108 F.3d 486 (3d Cir. 1997).

Finally, Rose's purported reservation of his claims is

not relevant to the <u>Rooker-Feldman</u> analysis.  Rose attempts to invoke the <u>England</u> procedure, whereby a party forced to litigate in state court because of a federal court's abstention can return to federal court if the party expressly declined to litigate its federal claims in state court.  <u>England v. La. State Board of Medical Examiners</u>, 375 U.S. 411 (1964); <u>Instructional Systems, Inc. v. Computer Curriculum Corp.</u>, 35 F.3d 813, 821 (3d Cir. 1994).  But there has been no abstention in this case and therefore <u>England</u> does not apply.  See <u>Bernardsville Quarry v. Bernardsville</u>, 929 F.2d 927, 929 (3d Cir. 1991); <u>Pawlak v. Pa. Board of Law Examiners</u>, 1995 WL 517646 at *10-12 (E.D. Pa.).

B. <u>The Surviving Claims</u>

As outlined above, several of Rose's claims survive the <u>Rooker-Feldman</u> bar: (1) the equal protection claim relating to Rose's alleged courthouse detention and the incidents surrounding the contempt charge; (2) the "kidnapping" claim; and (3) the corresponding conspiracy claims.  The Court therefore considers the parties' other arguments for dismissal.

1.   <u>The York Defendants</u>

The York defendants argue that Rose's claims are barred by the statute of limitations.  Section 1983 claims originating in Pennsylvania borrow Pennsylvania's two year statute of

limitations for personal injury actions.  Lake v. Arnold, 232
F.2d 360, 368-69 (3d Cir. 2000).  The contempt charge and Rose's
alleged courthouse detention occurred sometime in the fall of
2001, and the alleged "kidnapping," which the Court is treating
as a section 1983 claim, occurred in 2000.  This lawsuit was
instituted in November of 2005, well after the two year statute
of limitations on any of these claims had run and therefore they
are time-barred.

        Section 1983 or section 1985 conspiracy claims are also
subject to Pennsylvania's two-year statute of limitations for
personal injury actions, and a plaintiff must seek redress within
the limitations period for each act causing injury.  Kost, 1 F.3d
at 191; Bougher v. University of Pittsburgh, 882 F.2d 74, 79-80
(3d Cir. 1989).  The surviving conspiracy claims are therefore
time-barred as well.

        Rose argues that the continuing violations doctrine and
the discovery rule render his claims timely.  The continuing
violations doctrine is an equitable doctrine which focuses on the
affirmative actions of the defendants.  Cowell v. Palmer
Township, 263 F.3d 286, 293 3d Cir. 2001).  The Court declines to
exercise its equitable power and find the plaintiff's suit timely
in a case such as this, where the plaintiff has failed to allege
a single cognizable injury in the limitations period.

        The discovery rule is likewise inapplicable.  Rose does

-13-

not claim that he did not know of his injury or its causes, but rather he did not know the identity of all of the tortfeasors. This is not the type of "discovery" that warrants application of the discovery rule. See Mest v. Cabot Corp., 449 F.3d 502, 510-11 (3d Cir. 2006).


      2.  County of Lehigh

The County of Lehigh has not raised a statute of limitations defense, but it argues that Rose has failed to state a claim because Rose has not alleged any actions by Lehigh County actors that would subject the county to liability.  The Court agrees.

Lehigh's liability for the actions surrounding the contempt charge and courthouse detention, since they involve only York actors, must be premised on a conspiracy.  But a general accusation of conspiracy, devoid of any factual underpinnings, does not state a cause of action.  Fuentes v. South Hill Cardiology, 946 F.2d 196, 201-02 (3d Cir. 1991).  Rose has not made specific factual allegations that, if proven, would indicate that Lehigh County conspired with York County and the City of York, instead offering bare legal conclusions (for example, that York officials acted at the "behest of Lehigh County").  Am. Compl. ¶ 91.

Such a naked allegation is insufficient to support

-14-

Rose's conspiracy claim against Lehigh County even under the ordinary notice pleading standards. See, e.g., Garcia v. Police Officer John Doe # 1-4, 2003 WL 2235842 at *3-4 (E.D. Pa. 2003); Behm v. Luzerne County Children & Youth Policy Makers, 172 F.Supp.2d 575, 587-88 (M.D. Pa. 2001); Gordon v. Lowell, 95 F.Supp.2d 264 (E.D. Pa. 2000); Moyer v. Borough of North Wales, 2000 WL 875704 at *4 (E.D. Pa. 2000);  Rourke v. U.S., 744 F.Supp. 100, 104-05 (E.D. Pa. 1999); Alberici v. Szewczak, 1997 WL 550224 at *3 n.8 (E.D. Pa. 1997).

Because of the lack of facts in Rose's complaint tying Lehigh County to the actions in York County, it is impossible for Lehigh County to respond to Rose's surviving equal protection or conspiracy claims.  See Rose v. Bartle, 871 F.2d 331, 366 n.60 (3d Cir. 1989); Evancho v. Fisher, 423 F.3d 347 (3d Cir. 2005). Accordingly, the Court will dismiss these claims against Lehigh County without prejudice.[3]

---

[3]     The Court rejects several of Lehigh County's arguments that would support dismissal with prejudice.  First, the county argues that Rose's complaint should be dismissed because counties cannot be liable for the actions of Court of Common Pleas judges. But Rose's claims that are dismissed without prejudice do not seek damages for the conduct of judicial officers.

Second, the county argues that a prior federal suit filed by the plaintiff, Rose v. County of Lehigh, 2001 WL 1085044, has preclusive effect here.  Although the prior suit, like the present case, dealt with claims of discrimination in connection with custody proceedings, the claims that are dismissed without prejudice in the current suit arose after Rose's prior case was dismissed.

The "kidnapping" claim will be dismissed for the same reason.  According to the complaint, the incident involved only the Salisbury Township Police, and therefore Rose has failed to plead facts that would warrant the imposition of liability on Lehigh County.

IV. <u>Conclusion</u>

For the foregoing reasons, the Court grants the defendants' motions to dismiss.  Because Rose has not demonstrated a likelihood of success on the merits, the Court will deny his motion for a temporary injunction.

Although the docket indicates otherwise, the Return of Service states that the fourth defendant, Scott Rohrbaugh, has not been served with the amended complaint.  The plaintiff must serve a complaint on Rohrbaugh within 30 days if he wishes to pursue claims against him.

An appropriate order follows.

---

Third, the county argues for abstention under <u>Younger</u>, but Rose seeks only money damages, and neither the United States Supreme Court nor the United States Court of Appeals for the Third Circuit has extended <u>Younger</u> abstention to claims for money damages.  <u>Marran v. Marran</u>, 376 F.3d at 155.  Even if <u>Younger</u> abstention were proper in such suits, it would not be appropriate here, where the ongoing litigation in Lehigh County Family Court is unrelated to Rose's claims that are dismissed without prejudice.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMES E. ROSE, JR.,                  :
            Plaintiff,               :    CIVIL ACTION
                                     :
        v.                           :
                                     :
COUNTY OF YORK, et al.,              :
            Defendants               :    NO. 05-5820


ORDER


        AND NOW, this 12th day of January, 2007, upon
consideration of the plaintiff's Motion for a Temporary
Injunction (Docket No. 4) and the defendants' opposition thereto,
and the defendants' motions to dismiss (Docket Nos. 6, 8, and 10)
and plaintiff's opposition thereto, IT IS HEREBY ORDERED that
plaintiff's Motion for a Temporary Injunction is DENIED.

        IT IS FURTHER ORDERED THAT the defendants' Motions to
Dismiss are GRANTED.  The plaintiff's equal protection claim
arising from the incidents surrounding the contempt charge and
the courthouse detention, the "kidnapping" claim, and the
corresponding conspiracy claims, all against Lehigh County, are
DISMISSED WITHOUT PREJUDICE.  The plaintiff shall have thirty
(30) days in which to amend his complaint.  The plaintiff's other
claims are DISMISSED WITH PREJUDICE.

        IT IS FURTHER ORDERED that if the plaintiff wishes to
pursue his claims against Scott Rohrbaugh, he shall serve him
with a complaint within thirty (30) days.  The claims against

Rohrbaugh will be dismissed if service is not made within 30 days.  The Clerk of Court shall amend the docket to reflect the fact that Scott Rohrbaugh has not been served, as stated in the Return of Service (Docket No. 3).

                              BY THE COURT:


                              /s/ Mary A. McLaughlin
                              MARY A. McLAUGHLIN, J.